FILED

MAY 28 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILDERNESS SOCIETY; et al.,<br><br>          Plaintiffs - Appellants,<br><br>   v.<br><br>BUREAU OF LAND MANAGEMENT; et al.,<br><br>          Defendants - Appellees. | No. 11-17482<br><br>D.C. No. 3:09-cv-08010-PGR<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, Senior District Judge, Presiding

Argued and Submitted May 16, 2013
San Francisco, California

Before: CLIFTON and BEA, Circuit Judges, and DUFFY, District Judge.[**]

   The Wilderness Society (TWS) and other plaintiffs appeal the dismissal of their action challenging land management plans developed by the Bureau of Land Management (BLM) for the Grand Canyon-Parashant and Vermilion Cliffs

---

   [*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

   [**]   The Honorable Kevin Thomas Duffy, District Judge for the Southern District of New York, sitting by designation.

National Monuments. TWS argues that the agency violated the proclamations and applicable statutes and regulations in developing the plans. The district court granted summary judgment to BLM, which we review de novo. *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006). Because we conclude that the decisions of BLM were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(a), we affirm.

BLM did not violate the proclamations by permitting moderate to minor damage to some monument objects. The proclamations establish the monuments "for the purpose of protecting the objects," but also allow other uses such as grazing and public visitation. BLM interpreted the proclamations to permit balancing the protection of monument objects with other uses, rather than require absolute protection of each individual object. Giving the deference we owe to BLM's interpretation, we conclude that it is a reasonable one. *See Am. Fed'n of Gov't Emps. v. Fed. Labor Relations Auth.*, 204 F.3d 1272, 1274–75 (9th Cir. 2000).

Nor did BLM violate t he proclamations' prohibition on "all motorized and mechanized vehicle use off roads." First, BLM was reasonable in interpreting the word "road" to include routes managed for use by four-wheel drive or high-clearance vehicles, rather than a more restrictive definition. The proclamations do

not define road, BLM did not consistently use any one definition of road across its projects prior to the proclamations, and adopting the restrictive definition advocated by TWS would require closing off over 94 percent of the routes previously open to the public in Vermilion Cliffs. Second, TWS has not proved that BLM has allowed vehicle access on trails. The record shows that BLM distinguished between roads and trails in its route inventory and approved plans.

BLM is required to minimize harm to particular resources when designating routes, including soil, vegetation, air, and wildlife. 43 C.F.R. § 8342.1(a)–(c). BLM considered impacts to many of these resources in its route evaluation tree, and the route reports generated for each route evidence that it sought to minimize impacts to these resources. BLM did not consider impacts to certain resources in its route evaluation tree, but it considered these resources in the National Environmental Policy Act (NEPA) process and then selected a route designation plan that minimized impacts. We are not persuaded by TWS's arguments that BLM cannot fulfill its obligation to minimize harm with the aid of the NEPA process. First, TWS argues that NEPA analysis assesses impacts from route designation as a whole rather than the impacts from each individual route. But the minimization regulation does not state that the impacts must be minimized on a route-by-route basis. Second, TWS argues that while NEPA requires considering

alternatives that minimize impacts, it does not actually require minimizing impacts. That is true, but BLM fulfilled its obligations under the minimization regulation by selecting an alternative identified in the NEPA process that minimized impacts to resources.

The National Historic Preservation Act (NHPA) requires BLM to "make a reasonable and good faith effort" to identify historic properties that will be affected by its designation of routes. 36 C.F.R. § 800.4(b)(1). Although BLM relied on existing inventory information that covered less than 5 percent of the area in the monuments, it committed to conducting ongoing inventories after the adoption of the plans, citing the extensive size of the planning area as a barrier to conducting more involved inventories before adopting the plans. An agency is permitted to "use a phased process to conduct identification and evaluation efforts" when planning for areas consisting of "corridors or large land areas." 36 C.F.R. § 800.4(b)(2). BLM's decision to use a phased inventory approach was reasonable and permitted by regulation.

The NHPA further requires that BLM consult with Arizona's State Historic Preservation Officer (SHPO) when identifying historic sites. BLM consulted with the SHPO when developing its policy manual concerning the designation of roads, which the BLM followed when designating roads in these monuments. During the

planning process, BLM also provided the SHPO with copies of its draft and final environmental impact statements. This is not a case like *Quechuan Tribe*, where a tribe entitled to consultation actively sought to consult with an agency and was not afforded the opportunity. *Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior*, 755 F. Supp. 2d 1104 (S.D. Cal. 2010). Here, the SHPO was kept apprised of BLM's inventory efforts and did not offer additional input or ask for opportunities to provide it. We conclude that, under these circumstances, BLM's consultation efforts were sufficient.

Finally, BLM did not unlawfully confine its full discretion to protect wilderness characteristics by refusing to designate Wilderness Study Areas. BLM has discretion under the Federal Land Policy and Management Act (FLPMA) to manage land for the protection of wilderness values. *Or. Natural Desert Ass'n v. BLM*, 625 F.3d 1092, 1111–14 (9th Cir. 2010). BLM formerly exercised this discretion by designating Wilderness Study Areas, in which it would provide a high degree of protection to wilderness characteristics, but it also retained the discretion to revoke this designation. *Id.* at 1115. Under a new policy adopted after a settlement with the State of Utah, BLM no longer designates areas as Wilderness Study Areas. But the record shows that BLM views the change in policy as

semantic. Under the new policy, BLM still retains its discretion under the FLPMA to protect wilderness characteristics over other uses.

For similar reasons, BLM did not violate NEPA by failing to designate areas as Wilderness Study Areas. BLM considered alternatives that provided a high degree of protection to wilderness characteristics, which fulfills its obligations under NEPA.

**AFFIRMED.**